NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8644
    Facsimile: (213) 894-0141
    E-mail:   Matthew.O'Brien@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

MATTHEW BURROUGHS,

    Defendant.

No. CR 19-00068-FMO

PLEA AGREEMENT FOR DEFENDANT
MATTHEW BURROUGHS

1.   This constitutes the plea agreement between defendant
MATTHEW BURROUGHS ("defendant") and the United States Attorney's
Office for the Central District of California (the "USAO") in the
above-captioned case.  This agreement is limited to the USAO and
cannot bind any other federal, state, local, or foreign prosecuting,
enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

    a.   At the earliest opportunity requested by the USAO and
provided by the Court, appear and plead guilty to the single-count
information in this matter, in the form attached to this agreement as

Exhibit A or a substantially similar form, which charges defendant with a violation of Title 18 United States Code, Section 371, conspiracy to commit an offense against the United States, namely, introducing misbranded drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a), 352, 333(a)(1), a Class A misdemeanor offense.

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.    Make restitution and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

h.    Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

i.    Recommend and advocate to the Court that defendant be sentenced as provided in paragraphs 12 and 13.

THE USAO'S OBLIGATIONS

3.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.    Recommend and advocate to the Court that defendant be sentenced as provided in paragraphs 12 and 13.

NATURE OF THE OFFENSE

4.    Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, conspiracy, in violation of Title 18, United States Code, Section 371, the following must be true: (1) beginning on or about an unknown date, and ending on or about February 17, 2017, there was an agreement between two or more persons to introduce and cause the introduction of misbranded drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a), 352, and 333(a)(1); (2) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, with agreement on a particular overt act that was committed.

## PENALTIES AND RESTITUTION

5.     Defendant understands that the statutory maximum sentence that the Court can impose for a misdemeanor violation of Title 18, United States Code, Section 371, is:   one year of imprisonment; a one-year period of supervised release or a five-year period of probation; a fine of $100,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $25.

6.     Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.   Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7.     Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.   Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.   In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result of any relevant conduct,

4

1  as defined in U.S.S.G. § 1B1.3, in connection with the offense to
2  which defendant is pleading guilty.

3      8.   Defendant understands that, by pleading guilty, defendant
4  may be giving up valuable government benefits and valuable civic
5  rights, such as the right to vote, the right to possess a firearm,
6  the right to hold office, and the right to serve on a jury.
7  Defendant understands that once the court accepts defendant's guilty
8  plea, it may be a federal felony for defendant to possess a firearm
9  or ammunition.  Defendant understands that the conviction in this
10  case may also subject defendant to various other collateral
11  consequences, including but not limited to revocation of probation,
12  parole, or supervised release in another case and suspension or
13  revocation of a professional license.  Defendant understands that
14  unanticipated collateral consequences will not serve as grounds to
15  withdraw defendant's guilty plea.

16      9.   Defendant understands that, if defendant is not a United
17  States citizen, the conviction in this case may subject defendant to:
18  removal, also known as deportation, which may, under some
19  circumstances, be mandatory; denial of citizenship; and denial of
20  admission to the United States in the future.  The court cannot, and
21  defendant's attorney also may not be able to, advise defendant fully
22  regarding the immigration consequences of the felony conviction in
23  this case.  Defendant understands that unexpected immigration
24  consequences will not serve as grounds to withdraw defendant's guilty
25  plea.

26                      FACTUAL BASIS

27      10.   Defendant admits that defendant is, in fact, guilty of the
28  offense to which defendant is agreeing to plead guilty.  Defendant

5

and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Defendant worked for co-defendant LANCASTER DISTRIBUTORS, INC. ("LANCASTER"), whose business included the distribution of male sexual enhancement pills. From January 2013 through February 2017, defendant, on behalf of LANCASTER, purchased at least 153,000 male sexual enhancement pills from Co-conspirator #1, who manufactured and sold the pills from locations in the Central District of California. LNCASTER paid approximately $362,000 to Co-conspirator #1 for these pills. All of the male sexual enhancement pills that defendant purchased from Co-conspirator #1 contained Tadalafil, the active pharmaceutical ingredient in the prescription drug Cialis.

Co-conspirator #1 manufactured the pills using Tadalafil that he had smuggled into the United States from suppliers in China. While the typical Cialis prescription contains 25-85 mg of Tadalafil per pill, Co-conspirator #1 included up to 350-400 mg of Tadalafil in his pills. None of Co-conspirator #1's pills had been tested or approved by the Food and Drug Administration ("FDA"). Co-conspirator #1 also included Sildenafil, the active pharmaceutical ingredient in Pfizer, Inc.'s prescription drug Viagra, that he had smuggled into the United States from China, as an ingredient in the male sexual enhancement pills that he supplied to defendant.

Co-conspirator #1 did not disclose the presence of Tadalafil (or Sildenafil) on the packaging of the pills that he supplied to defendant.  While the packaging differed somewhat for each of the pill brands, each contained basically the same text in its labeling. All of the labels for the pills that Co-conspirator #1 supplied to defendant stated "no prescription necessary" and listed as ingredients a "proprietary blend" of 13 specified herbal ingredients, plus a "special blend."  None of the labels disclosed that the pills contained Tadalafil or that the pills were drugs for which a prescription was necessary.

Defendant typically purchased three types of pills from Co-conspirator #1 and Co-conspirator #2 (who was Co-conspirator #1's assistant):  white pills, gold pills, and silver pills.  Each color pill had a different brand name, strength, and price (white was the weakest and cheapest; silver was the strongest and most expensive). When the FDA announced that one of Co-conspirator #1's pill brands was tainted because it contained undisclosed active pharmaceutical ingredients (including Tadalafil), Co-conspirator #1 would begin manufacturing the same colored pill but with a different brand name. Thus, while the brand names of Co-conspirator #1's pills changed over the years, the formulas for the white, gold, and silver pills remained the same.

In December 2015, the FDA announced that Co-conspirator #1's white "X Again" pills were tainted because they contained undisclosed Tadalafil.  Thereafter, defendant and LANCASTER agreed to begin buying a replacement brand of pills from Co-conspirators #1 and #2, branded "X Monster," which had the same formula and price as the tainted "X Again" pills and similar labeling that failed to disclose

the presence of Tadalafil.  On March 2, 2016, Co-conspirator #2 informed defendant that "[n]ot sure if you were aware but X-Again was pulled by the FDA.  So now, we are replacing XA with a new brand called X-monster that has the same formula but slight changes on package artwork."  Defendant replied, in relevant part, "Ok go ahead and substitute please."

Pursuant to defendant's requests, Co-conspirator #2 shipped the following quantities of white "X Monster" pills from the Central District of California to defendant in Salem, Oregon:

| Date | Invoice | Pill Quantity |
|------|---------|---------------|
| 3/2/16 | 5006 | 1,200 |
| 4/8/16 | 5046 | 1,440 |
| 5/26/16 | 5105 | 2,040 |
| 6/24/16 | 5136 | 1,200 |
| 9/7/16 | 5240 | 2,040 |
| 10/14/16 | 5279 | 600 |
| 10/17/16 | 5288 | 1,440 |

Defendant knew, or should have known, that all of the "X Monster" pills that he bought from Co-conspirators #1 and 2 were misbranded and contained undisclosed Tadalafil.

In August 2016, the FDA announced that Co-conspirator #1's gold "Master Zone" pills and silver "One More Knight" pills were tainted because they contained undisclosed Tadalafil.  Thereafter, defendant and LANCASTER agreed to begin buying (1) a replacement gold pill from Co-conspirators #1 and #2, branded "Royal Master," which had the same formula and price as the tainted "Master Zone" pills and similar labeling that failed to disclose the presence of Tadalafil, and (2) a replacement silver pill from Co-conspirators #1 and #2, branded "Own the Knight," which had the same formula and price as the tainted "One More Knight" pills and similar labeling that failed to disclose the

1  presence of Tadalafil.  On October 25, 2016, defendant wrote to Co-
2  conspirator #2 and asked, "Is Royal master replacing Master Zone?  Is
3  one More Knight being replaced?"  Co-conspirator #2 responded to
4  defendant that "Yes, both items were put on the FDA list back in
5  August. . . .  Sorry if we forgot to let you know!  Master Zone is
6  being replaced by Royal Master and One More Knight is being replaced
7  by Own The Knight, but nothing changes on the formula."

8      Pursuant to defendant's orders, Co-conspirator #2 shipped the
9  following quantities of pills from the Central District of California
10  to defendant in Salem, Oregon:

| Date | Invoice | White Pill Quantity (X Monster) | Gold Pill Quantity (Royal Master) | Silver Pill Quantity (Own the Knight) |
|---|---|---|---|---|
| 10/28/16 | 5309 | – | – | 1,200 |
| 11/1/16 | 5312 | 600 | – | – |
| 11/4/16 | 5326 | – | – | 1,440 |
| 11/11/16 | 5338 | – | – | 1,200 |
| 11/18/16 | 5348 | – | – | 1,440 |
| 11/21/16 | 5354 | – | 1,440 | – |
| 1/5/17 | 5375 | – | – | 1,800 |
| 1/13/17 | 5387 | 1,200 | 1,200 | 600 |
| 1/17/17 | 5401 | 600 | – | – |
| 1/23/17 | 5417 | – | – | 1,200 |
| 2/7/17 | 5442 | – | 1,440 | – |
| 2/13/17 | 5455 | – | – | 1,200 |
| 2/17/17 | 5466 | – | 1,200 | 1,200 |

23  Defendant knew, or should have known, that all of the "Royal
24  Master" and "Own the Knight" pills that he bought from Co-
25  conspirators #1 and 2 were misbranded and contained undisclosed
26  Tadalafil.

9

1

## SENTENCING FACTORS

2    11.   Defendant understands that in determining defendant's
3 sentence the Court is required to calculate the applicable Sentencing
4 Guidelines range and to consider that range, possible departures
5 under the Sentencing Guidelines, and the other sentencing factors set
6 forth in 18 U.S.C. § 3553(a).   Defendant understands that the
7 Sentencing Guidelines are advisory only, that defendant cannot have
8 any expectation of receiving a sentence within the calculated
9 Sentencing Guidelines range, and that after considering the
10 Sentencing Guidelines and the other § 3553(a) factors, the Court will
11 be free to exercise its discretion to impose any sentence it finds
12 appropriate up to the maximum set by statute for the crime of
13 conviction.

14    12.   Defendant and the USAO agree to the following applicable
15 Sentencing Guidelines factors:

16    Base Offense Level:              6        [U.S.S.G. § 2N2.1(a)]
17    Acceptance of Responsibility:   -2        [U.S.S.G. § 3E1.1(a)]
18    Total Offense Level:             4

19
20 The USAO will agree to a two-level downward adjustment for acceptance
21 of responsibility (and, if applicable, move for an additional one-
22 level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the
23 conditions set forth in paragraph 3 are met.   Subject to paragraph 25
24 below, defendant and the USAO agree not to seek, argue, or suggest in
25 any way, either orally or in writing, that any other specific offense
26 characteristics, adjustments, or departures relating to the offense
27 level be imposed.   Defendant agrees, however, that if, after signing
28 this agreement but prior to sentencing, defendant were to commit an

act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

13. Defendant and the USAO agree that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7) and the relevant sentencing guideline factors set forth above, an appropriate disposition of this case is that the court impose a sentence of: (a) $25 special assessment; (b) a 5-year term of probation with conditions to be fixed by the Court, including 400 hours of community service; and (c) a $10,000 fine, which defendant shall pay within two weeks of the entry of judgment by certified check or wire transfer to the Clerk of the United States District Court for the Central District of California (defendant shall provide confirmation of the completed payment to the USAO).

14. The parties agree that they will recommend that the court impose the sentence set forth in paragraph 13 above, and that they will not seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, departures, or variances in sentence pursuant to the Sentencing Guidelines and/or the factors set forth in 18 U.S.C. § 3553(a) be imposed, or that the court impose a sentence other than what has been stipulated to by the parties herein.

15. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

11

## WAIVER OF CONSTITUTIONAL RIGHTS

16.  Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.   The right to persist in a plea of not guilty.

      b.   The right to a speedy and public trial by jury.

      c.   The right to be represented by counsel -- and if necessary have the court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the court appoint counsel -- at every other stage of the proceeding.

      d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.   The right to confront and cross-examine witnesses against defendant.

      f.   The right to testify and to present evidence in opposition to the charge, including the right to compel the attendance of witnesses to testify.

      g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

      h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

17.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to

appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

18.  Defendant agrees that, provided the Court imposes a total term of imprisonment on the count of conviction of no more than six months, or a total period of probation of no more than five years if imprisonment is not imposed, defendant gives up the right to appeal all of the following:  (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraphs 2 and 13 above.

19.   The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

20.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### EFFECTIVE DATE OF AGREEMENT

21.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

22.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of

14

defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

23. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under

15

the United States Constitution, any statute, Rule 410 of the Federal
Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
Procedure, or any other federal rule, that the statements or any
evidence derived from the statements should be suppressed or are
inadmissible.

COURT AND PROBATION OFFICE NOT PARTIES

24.  Defendant understands that the Court and the United States
Probation Office are not parties to this agreement and need not
accept any of the USAO's sentencing recommendations or the parties'
agreements to facts or sentencing factors.

25.  Defendant understands that both defendant and the USAO are
free to: (a) supplement the facts by supplying relevant information
to the United States Probation Office and the Court, (b) correct any
and all factual misstatements relating to the Court's Sentencing
Guidelines calculations and determination of sentence, and (c) argue
on appeal and collateral review that the Court's Sentencing
Guidelines calculations and the sentence it chooses to impose are not
error, although each party agrees to maintain its view that the
calculations in paragraph 12 are consistent with the facts of this
case.  While this paragraph permits both the USAO and defendant to
submit full and complete factual information to the United States
Probation Office and the Court, even if that factual information may
be viewed as inconsistent with the facts agreed to in this agreement,
this paragraph does not affect defendant's and the USAO's obligations
not to contest the facts agreed to in this agreement.

26.  Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the

maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

27.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

1

2  ## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

3      28.  The parties agree that this agreement will be considered

4  part of the record of defendant's guilty plea hearing as if the

5  entire agreement had been read into the record of the proceeding.

6  AGREED AND ACCEPTED

7  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
   CALIFORNIA

8  NICOLA T. HANNA
   United States Attorney

9

10                                          2-6-19
   _____    _____
11 MATTHEW W. O'BRIEN                   Date
   Assistant United States Attorney

12                                          1/23/19
   _____    _____
13 MATTHEW BURROUGHS                    Date
   Defendant

14                                          1/23/19
   _____    _____
15 PAUL FERDER                          Date
   Attorney for Defendant MATTHEW
16 BURROUGHS

17

18                  ## CERTIFICATION OF DEFENDANT

19      I have read this agreement in its entirety.  I have had enough

20 time to review and consider this agreement, and I have carefully and

21 thoroughly discussed every part of it with my attorney.  I understand

22 the terms of this agreement, and I voluntarily agree to those terms.

23 I have discussed the evidence with my attorney, and my attorney has

24 advised me of my rights, of possible pretrial motions that might be

25 filed, of possible defenses that might be asserted either prior to or

26 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

27 of relevant Sentencing Guidelines provisions, and of the consequences

28

                                   18

of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          1/23/19
MATTHEW BURROUGHS                          Date
Defendant

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MATTHEW BURROUGHS' attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set

19

forth in this agreement is sufficient to support my client's entry of

a guilty plea pursuant to this agreement.

_____      _____1/23/19_____
PAUL FERDER                          Date
Attorney for Defendant MATTHEW
BURROUGHS

# EXHIBIT A

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,          CR No. 19-

11            Plaintiff,               I N F O R M A T I O N

12            v.                       [18 U.S.C. § 371: Conspiracy]

13  LANCASTER DISTRIBUTORS, INC.,      [CLASS A MISDEMEANOR]
        and
14  MATT BURROUGHS,

15            Defendants.

16

17       The United States Attorney charges:

18                    INTRODUCTORY ALLEGATIONS

19       At all times relevant to this Information:

20  A.   THE DEFENDANTS AND CO-CONSPIRATORS

21       1.   Defendant LANCASTER DISTRIBUTORS, INC. ("LANCASTER") was

22  located at 3925 Labranche Street in Salem, Oregon.   Defendant

23  LANCASTER distributed male sexual enhancement pills to retail

24  locations across the United States.

25       2.   Defendant MATT BURROUGHS ("BURROUGHS") was an employee of

26  LANCASTER.   Defendant BURROUGHS was responsible for ordering male

27  sexual enhancement pills from defendant LANCASTER's suppliers.

28

3.    Co-conspirator #1 supplied male sexual enhancement pills to defendants LANCASTER and BURROUGHS.  Co-conspirator #1 owned and operated several businesses between 2011 and 2017 for the purpose of manufacturing and distributing male sexual enhancement pills that he marketed as herbal remedies, but that in fact contained undisclosed Tadalafil, an active pharmaceutical ingredient.  Each of Co-conspirator #1's pill businesses was located in the Central District of California.

4.    Co-conspirator #2 worked for Co-conspirator #1 as an office assistant from approximately 2014 to 2017.

5.    These Introductory Allegations are hereby re-alleged and incorporated by reference in the following count.

COUNT ONE

[18 U.S.C. § 371]

Beginning on a date unknown to the United States Attorney and continuing to on or about February 17, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants LANCASTER and BURROUGHS, together with others known and unknown to the United States Attorney, including Co-conspirators #1 and #2, knowingly conspired and agreed to introduce and cause the introduction of misbranded drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a), 352, and 333(a)(1).

A.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.   Co-conspirator #1 would import shipments of bulk Tadalafil from suppliers in China.

2.   After Co-conspirator #1 received the bulk Tadalafil in the Central District of California, he would cause the bulk Tadalafil to be manufactured into pills that Co-conspirators #1 and #2 would sell in packages whose labeling did not disclose the presence of Tadalafil, and whose labeling falsely stated that no prescription was necessary, even though the pills were in fact prescription drugs.

3.   Defendants LANCASTER and BURROUGHS would place orders for the misbranded pills with Co-conspirators #1 and #2.

4.   Co-conspirator #2 would fulfill the orders placed by defendants LANCASTER and BURROUGHS by shipping the misbranded drugs from the Central District of California to defendants LANCASTER and BURROUGHS in Salem, Oregon.

3

1    5.   Defendant LANCASTER would resell and distribute the
2    misbranded pills to retail locations across the United States.

3    6.   Defendants LANCASTER and BURROUGHS would track when the
4    Food and Drug Administration ("FDA") announced that a certain brand
5    of Co-conspirator #1's pills were tainted because they contained
6    undeclared Tadalafil.

7    7.   When the FDA announced that a certain brand of Co-
8    conspirator #1's pills was tainted because the pills contained
9    undeclared Tadalafil, defendants LANCASTER and BURROUGHS would begin
10   buying a replacement brand of pills, with an identical formula
11   (including Tadalafil) but different brand name, from Co-conspirators
12   #1 and #2.   For example:

13       a.   After the FDA announced in December 2015 that Co-
14   conspirator #1's white "X Again" pills were tainted because they
15   contained undisclosed Tadalafil, defendants LANCASTER and BURROUGHS
16   would begin buying a replacement brand of pills from Co-conspirators
17   #1 and #2, branded "X Monster," which had the same formula and price
18   as the tainted "X Again" pills and similar labeling that failed to
19   disclose the presence of Tadalafil.

20       b.   After the FDA announced in August 2016 that Co-
21   conspirator #1's gold "Master Zone" pills were tainted because they
22   contained undisclosed Tadalafil, defendants LANCASTER and BURROUGHS
23   would begin buying a replacement gold pill from Co-conspirators #1
24   and #2, branded "Royal Master," which had the same formula and price
25   as the tainted "Master Zone" pills and similar labeling that failed
26   to disclose the presence of Tadalafil.

27       c.   After the FDA announced in August 2016 that Co-
28   conspirator #1's silver "One More Knight" pills were tainted because

4

they contained undisclosed Tadalafil, defendants LANCASTER and BURROUGHS would begin buying a replacement silver pill from Co-conspirators #1 and #2, branded "Own the Knight," which had the same formula and price as the tainted "One More Knight" pills and similar labeling that failed to disclose the presence of Tadalafil.

8.    Defendant LANCASTER would resell and distribute the replacement pills to retail locations across the United States, despite knowing that the pills had the same formula and misleading packaging as the misbranded pills that the FDA had declared were tainted.

B.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants LANCASTER and BURROUGHS, and others both known and unknown to the United States Attorney, including Co-conspirators #1 and #2, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    On or about March 2, 2016, approximately three months after the FDA announced that Co-conspirator #1's white "X Again" pills were tainted because they contained undisclosed Tadalafil, Co-conspirator #2 informed defendants LANCASTER and BURROUGHS that "[n]ot sure if you were aware but X-Again was pulled by the FDA.  So now, we are replacing XA with a new brand called X-monster that has the same formula but slight changes on package artwork."

Overt Act No. 2:    On or about March 2, 2016, defendant BURROUGHS replied, in relevant part, "Ok go ahead and substitute please."

Overt Acts Nos. Three Through Nine:  On or about the following dates, pursuant to orders from defendants LANCASTER and BURROUGHS, Co-conspirator #2 shipped the following quantities of white "X Monster" pills from the Central District of California to defendants LANCASTER and BURROUGHS in Salem, Oregon:

| Overt Act | Date | Invoice | Pill Quantity |
|-----------|------|---------|---------------|
| 3 | 3/2/16 | 5006 | 1,200 |
| 4 | 4/8/16 | 5046 | 1,440 |
| 5 | 5/26/16 | 5105 | 2,040 |
| 6 | 6/24/16 | 5136 | 1,200 |
| 7 | 9/7/16 | 5240 | 2,040 |
| 8 | 10/14/16 | 5279 | 600 |
| 9 | 10/17/16 | 5288 | 1,440 |

Overt Act No. 10:  On or about October 25, 2016, approximately two months after the FDA announced that Co-conspirator #1's gold "Master Zone" pills and silver "One More Knight" pills were tainted because they contained undisclosed Tadalafil, defendant BURROUGHS wrote to Co-conspirator #2 and asked, "Is Royal master replacing Master Zone?  Is one More Knight being replaced?"

Overt Act No. 11:  On or about October 26, 2016, Co-conspirator #2 responded to defendant BURROUGHS that "Yes, both items were put on the FDA list back in August. . . .  Sorry if we forgot to let you know!  Master Zone is being replaced by Royal Master and One More Knight is being replaced by Own The Knight, but nothing changes on the formula."

Overt Acts Nos. Twelve Through Twenty-Four:  On or about the following dates, pursuant to orders from defendants LANCASTER and BURROUGHS, Co-conspirator #2 shipped the following quantities of pills from the Central District of California to defendants LANCASTER and BURROUGHS in Salem, Oregon:

6

| Overt Act | Date | Invoice | White Pill Quantity (X Monster) | Gold Pill Quantity (Royal Master) | Silver Pill Quantity (Own the Knight) |
|---|---|---|---|---|---|
| 12 | 10/28/16 | 5309 | – | – | 1,200 |
| 13 | 11/1/16 | 5312 | 600 | – | – |
| 14 | 11/4/16 | 5326 | – | – | 1,440 |
| 15 | 11/11/16 | 5338 | – | – | 1,200 |
| 16 | 11/18/16 | 5348 | – | – | 1,440 |
| 17 | 11/21/16 | 5354 | – | 1,440 | – |
| 18 | 1/5/17 | 5375 | – | – | 1,800 |
| 19 | 1/13/17 | 5387 | 1,200 | 1,200 | 600 |
| 20 | 1/17/17 | 5401 | 600 | – | – |
| 21 | 1/23/17 | 5417 | – | – | 1,200 |
| 22 | 2/7/17 | 5442 | – | 1,440 | – |
| 23 | 2/13/17 | 5455 | – | – | 1,200 |
| 24 | 2/17/17 | 5466 | – | 1,200 | 1,200 |

NICOLA T. HANNA
United States Attorney


LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

JOSEPH O. JOHNS
Assistant United States Attorney
Chief, Environmental and
Community Safety Crimes Section

MATTHEW W. O'BRIEN
Assistant United States Attorney
Environmental and Community
Safety Crimes Section